IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LION BROS., a California partnership, | No. CV-F-05-0292 REC SMS |
| Plaintiff, | ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION. |
| vs. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | |
| Defendant. | |

On August 22, 2005, the court heard Defendant's motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.  Upon due consideration of the written and oral arguments of the parties, the court GRANTS Defendant's motion on the grounds that the Complaint was not ripe when filed.

**I.  Background**

On February 28, 2005, Plaintiff Lion Brothers Farms ("Lion") filed a complaint against the United States Department of Agriculture ("USDA") alleging that the USDA failed to provide Lion with agricultural inspections of raisins as requested by Lion.  The Complaint seeks declaratory and injunctive relief.

1

1       **A.   Raisin Inspections Generally**

2       Pursuant to its authority under the Agricultural Marketing

3  Act of 1946, as amended, 7 U.S.C. § 1621 *et seq.*, (the "1946

4  Act"), the USDA has issued regulations governing the inspection

5  and certification of certain fresh fruits, vegetables, and

6  processed products and established standards for grades of those

7  commodities.  Title 7, Part 52 of the Code of Federal Regulations

8  provides for the inspection and certification of processed fruits

9  and vegetables, including processed raisins, and the standards

10  for those commodities.  7 C.F.R. § 52.

11      Part 52 also contains the regulations regarding the

12  application for inspection and grading services under the 1946

13  Act.  It provides that "any interested party" may make and

14  application for inspections.  7 C.F.R. § 52.5.  It further

15  specifies the procedure for making an application; "[a]n

16  application for inspection service may be made to the office of

17  inspection or to any inspector, at or nearest the place where the

18  service is desired."  7 C.F.R. § 52.6.  An application may be

19  made orally or in writing and must provide certain necessary

20  information

21          including but not limited to, the name of the product,
            name and address of the packer or plant where such
22          product was packed, the location of the product, its
            lot or car number, codes or other identification marks,
23          the number of containers, the type and size of the
            containers, the interest of the applicant in the
24          product, whether the lot has been inspected previous to
            the application by any Federal agency and the purpose
25          for which inspection is desired.

26  7 C.F.R. § 52.7.  An application must be made in accordance with

2

the regulations in part 52 to be considered filed, 7 C.F.R. §
52.8, and failure to comply with the filing procedures may be a
basis for rejecting an inspection request.  7 C.F.R. § 52.10.

Pursuant to its authority under the Agricultural Marketing
Agreement Act of 1937, as amended 7 U.S.C. § 601 *et seq.*, (the
"1937 Act"), the USDA has also established a marketing order
regulating the handling of raisins produced from grapes grown in
California and establishing minimum grade and condition standards
for both natural condition and packed California raisins (the
"Raisin Marketing Order" or "Order").  The Raisin Marketing Order
is set forth in Title 7, part 989 of the Code of Federal
Regulations.  The Raisin Administrative Committee ("RAC") is
appointed by the USDA to oversee the Raisin Marketing Order.

Part 989 contains the regulations regarding inspections
under the Raisin Marketing order.  The Order requires each
"handler" of California raisins to cause "an inspection and
certification to be made of all natural condition raisins
acquired or received" with exceptions not applicable here, 7
C.F.R. § 989.58(d), and sets forth minimum grade and condition
standards for natural condition raisins at 7 C.F.R. § 989.701.

The Agricultural Marketing Service ("AMS") is charged with
the administration of the inspection regulations and provides
inspection and grading services to applicants in accordance with
the regulations established pursuant to the 1937 Act and the 1946
Act.  Inspections of natural condition and processed raisins are
designed to assess the essential characteristics, class, quality,

and condition of the product and to determine whether the product does or does not meet the applicable grade or grade and condition standards.

### B.  Lion's Allegations

Lion is a producer of grapes and raisins in Fresno and Madera counties.  It is not a "handler" of raisins.  In October 2004, Lion Raisins, which is a handler of raisins, contacted Ron Worthley, the Senior Vice President of the RAC, regarding providing inspections for raisins belonging to Lion that Lion had agreed to store with Lion Raisins.  Compl. Ex. A.

On October 13, 2004, Mr. Worthley informed Lion Raisins that there "are no provisions in the Marketing Order" for such an inspection, i.e. "no provisions that allow a grower to have his fruit certified as being inspected and meeting the minimum grade standards for incoming raisins and then hold them for future delivery to a packer."  Compl. Ex. B (emphasis added).

On October 20, 2004, Lion wrote to the RAC that it "would like to have the USDA perform an incoming inspection on about 500 tons of raisins at the Lion Raisins facility."  Compl. Ex. C.  To this Mr. Worthley replied that it was the handler, Lion Raisons, rather than the producer, Lion, that "would be required to acquire, place on memorandum storage or return the raisins to the producer according to the Raisin Marketing Order."  Compl. Ex. D.

Lion responded to this by explaining by fax dated November 2, 2004, that Lion did not want to commit to selling its raisins to the handler but wanted to obtain an inspection from the USDA

4

and then determine how to market its raisins.  The fax requested that Mr. Worthley "confirm USDA will inspect said raisins on behalf of Lion Brothers ASAP."  Compl. Ex. E.  Mr. Worthley responded that he asked for a review of Lion's request and that the USDA was looking into the issue.  Compl. Ex. F.

On November 18, 2004, Bruce Lion, on behalf of Lion, replied that "I have read through the Marketing Order and I see no reason not to approve what we have asked to be done."  Compl. Ex. G. Mr. Worthley's response was that the Raisin Marketing Order had no provision allowing a grower to have raisins certified as being inspected and that the procedure under the Raisin Marketing Order requires that a handler have inspections done in its name. Compl. Ex. H.  Since Lion is not a handler, it would have to deliver its raisins to a handler for inspection under the marketing order.

Lion alleges based on this correspondence that the USDA impermissibly refused to provide it with inspections.  Lion's first cause of action alleges that it was entitled to receive inspections under section 989.58 and 989.158(a)(3) (the Raisin Marketing Order), as well as under Title 7, Part 52 of the Code of Federal Regulations.  Lion seeks declaratory relief because, as it is not a handler, it cannot challenge the Raisin Marketing Order through the USDA's administrative proceedings.

Lion's second cause of action seeks an injunction prohibiting the USDA from precluding Plaintiff from applying for and receiving incoming USDA inspections.

1   **II.   The Current Motion**

2         USDA has moved to dismiss or, in the alternative for summary

3   judgment on the basis that Lion's claims are not ripe.  The USDA

4   argues that inspections were never requested of or denied by the

5   USDA, making Lion's claims premature.

6         Lion asserts that the USDA's motion should be denied

7   "because the RAC - the arm of USDA and which body oversees the

8   Order's regulations - claimed that it discussed this matter with

9   USDA and the requested inspections cannot take place."  Pl.'s

10  Opp'n at 2.  Lion argues that it has therefore been denied

11  inspections and its claim appropriate for judicial review.  In

12  the alternative, Lion asserts that subsequent to USDA's motion

13  being filed, Lion specifically requested an inspection from the

14  USDA and the request was wrongly denied.

15  **III.  Legal Standard**

16        "Whether a claim is ripe for adjudication goes to a court's

17  subject matter jurisdiction under the case or controversy clause

18  of article III of the federal Constitution."  St. Clair v. City

19  of Chico, 880 F.2d 199, 201, *cert. denied*, 493 U.S. 993 (9th Cir.

20  1989) (citations omitted).  Challenges to a court's subject

21  matter jurisdiction, including claims of ripeness, are addressed

22  under Rule 12(b)(1) rather than Rule 12(b)(6) of the Federal

23  Rules of Civil Procedure.[1]  Id.  "[W]hen considering a motion to

24  _____

25        [1]   The summary judgment standard should be used if the
    jurisdictional question is "so intertwined" with the merits of a
26  case that it depends on resolution of the merits.  Steen v. John
    Hancock Life Ins. Co., 106 F.3d 904, 910 (9th Cir. 1997).  There is

1   dismiss pursuant to Rule 12(b)(1) the district court is not

2   restricted to the face of the pleadings, but may review any

3   evidence, such as affidavits and testimony, to resolve factual

4   disputes concerning the existence of jurisdiction." McCarthy v.

5   United States, 850 F.2d 558, 560 (9th Cir. 1988).

6          The ripeness doctrine is concerned with whether a "dispute

7   has yet matured to a point that warrants decision."  13A C.

8   Wright, A Miller, & E. Cooper, Federal Practice & Procedure §

9   3532 (1984).  It is meant to "prevent the courts, through

10  avoidance of premature adjudication, from entangling themselves

11  in abstract disagreements."  Thomas v. Union Carbide Agric.

12  Prods. Co., 473 U.S. 568, 580, 87 L. Ed. 2d 409, 105 S. Ct. 3325

13  (1985) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136,

14  148-49, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967)).  If a claim

15  involves "contingent future events that may not occur as

16  anticipated, or indeed may not occur at all," it is not ripe.

17  Id. (quoting 13A C. Wright, A Miller, & E. Cooper, Federal

18  Practice & Procedure § 3532 (1984)).  Ripeness also concerns the

19  "fitness of the issues for judicial decision" and the "hardship

20  to the parties of withholding court consideration."  Id. (quoting

21  Abbott Labs, 387 U.S. at 149).

22         Ripeness is determined as of the commencement of the

23  litigation; it "is not a moving target affected by a defendant's

24  action."  Makua v. Rumsfeld, 136 F. Supp. 2d 1155, 1161 (D. Haw.

25  _____

26  no such intertwining in this case and, even viewing the facts in
    the light most favorable to Lion, the outcome would be the same.

1  2001) (citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl.</u>

2  <u>Servs., Inc.</u>, 528 U.S. 167, 189-91, 145 L. Ed. 2d 610, 120 S. Ct.

3  693 (2000)).  "[S]ubsequent ripening of the issue while the

4  matter is under the court's consideration on a jurisdictional

5  motion to dismiss is not sufficient to confer the court with

6  jurisdiction that did not originally exist when the action was

7  initiated."  15 <u>Moore's Federal Practice</u>, § 101.74 (Matthew

8  Bender 3d ed. 2005).

9  **IV. Discussion**

10      In support of its motion, USDA offers the declaration of

11  Mickey Martinez, who is the officer in charge of the Processed

12  Products Branch Inspection Service for AMS in Fresno, California.

13  One of Mr. Martinez's duties is to supervise the provision of

14  inspection and grading services for various commodities,

15  including raisins.  Mr. Martinez avers that, as of June 13, 2005,

16  Lion "has not applied for USDA inspection and certification

17  services for processed raisins.  Nor has Lion Bros.[] applied for

18  USDA inspection and grading services for natural condition

19  raisins as a handler, or at all."  Martinez Decl. ¶ 9.

20      Lion argues that the sole issue before the court is a legal

21  one: can "Lion Bros, a producer of raisins [ ] governed by the

22  Raisin Marketing Order receive and pay for the same inspection

23  that a handler, also regulated by the same Marketing Order, can

24  receive and pay for under the grade and condition requirements of

25  the Marketing Order."  Pl.'s Opp'n at 7.  In other words, Lion

26  argues that because it is entitled to inspections under the

8

1 Raisin Marketing Order it was wrongful for the RAC to refuse to
2 perform the requested inspection.

3 **A.  Lion Is Not Entitled to Inspections Under the Order**

4 The Raisin Marketing Order is specific; it states that "Each
5 ***handler***, shall cause an inspection to be made . . .." 7 C.F.R. §
6 989.58(d) (emphasis added).  It is undisputed that Lion is a
7 producer and not a handler of raisins.  Lion has cited no
8 language in the Raisin Marketing Order under which it could be
9 arguable that a producer such as Lion is required to procure
10 inspections under the Order in the same manner and at the same
11 rate as handlers.  Nor is there any language in the Raisin
12 Marketing Order that could be said to entitle a producer to
13 receive inspections pursuant to the Order.  This is precisely
14 what Mr. Worthley communicated to Lion in October of 2004.
15 Compl. Ex. B.  Because Lion was not required or entitled to
16 receive inspections under the Order, there can be no argument
17 that such an inspection was wrongfully denied.

18 **B.  Did the Correspondence Between Lion & the RAC Constitute**
19 **an Application Pursuant to Part 52?**

20 The only means by which a non-handler such as Lion can
21 obtain USDA inspections is pursuant to the 1946 Act and the
22 regulations promulgated thereunder, namely Part 52 of Title 7 of
23 the Code of Federal Regulations.  Part 52 provides that any
24 "interested party" may request an inspection pursuant to the 1946
25 Act.  Lion, as a producer, would plainly qualify as an
26 "interested party."  The question of ripeness turns on whether

9

1  Lion applied for inspections pursuant to Part 52.

2      The USDA argues that Lion's request to the RAC was

3  insufficient because the RAC is not an arm of the USDA such that

4  making a request to the RAC is tantamount to a request of the

5  USDA.  USDA cites <u>Lion Raisins v. United States</u>, 57 Fed. Cl. 435,

6  437 (2003), in which the Court of Federal Claims held that the

7  RAC is a non-appropriated fund instrumentalities ("NAFI") and

8  that it was not part of the government such that jurisdiction was

9  proper in the court of claims.

10      Lion argues in response that the RAC is "one and the same"

11  as the USDA, however Lion has cited, and the court's own research

12  has revealed, no authority for this proposition.  To the extent

13  Lion argues that because the RAC consulted with the USDA in

14  determining that Lion was not entitled to inspections under the

15  Raisin Marketing Order, the request was properly made to the

16  USDA, Lion is mistaken.  Lion's correspondence with the RAC

17  indicates that it is seeking inspections under the Raisin

18  Marketing Order, <u>see</u>, *inter alia*, Compl. Ex. G., not as an

19  "interested party" under Part 52.  The issue on which the RAC

20  consulted with the USDA was unrelated to the application process

21  under Part 52.

22      Even if the RAC is part of the USDA, Part 52 provides that

23  applications for inspection be made to "the office of inspection

24  or to any inspector, at or nearest the place where service is

25  desired."  7 C.F.R. § 52.6.  The RAC is not an inspector or an

26  inspection office; the regulations relating to the duties of the

10

1   RAC do not indicate that the administration of inspections for

2   producers is amongst the RAC's duties.  See 7 C.F.R. § 989.36.

3   Mr. Martinez, as the Officer in Charge of the AMS inspection

4   office in Fresno, is the proper party to whom requests for

5   inspections pursuant to Part 52 should be made.

6        The correspondence between the RAC and Lion does not amount

7   to an application for inspection services pursuant to Part 52.

8   As no request for an inspection was made by Lion, no application

9   was wrongly denied.  The Complaint was not ripe for judicial

10  review when filed.

11       **C.  Subsequent Correspondence With USDA is Insufficient**

12       Lion asserts that the USDA's motion is "disingenuous," Pl.'s

13  Opp'n at 3, because <u>after</u> Lion received USDA's motion to dismiss,

14  which was filed on June 14, 2005,

15       Lion Bros. did specifically ask USDA directly what the
         government claimed that Plaintiff did not do,[2] and the
16       unequivocal response from the USDA inspection service
         of June 21, 2005 claimed that said inspection service
17       for a producer was not available under the Order or
         Part 52 of 7 C.F.R.

18

19  Pl.'s Opp'n at 2-3 (citing Leighton Decl. Ex. I).  Assuming,

20  <u>arguendo</u>, that Lion's letter to Mr. Martinez constituted a proper

21  application for inspection services and that the response cited

22  by Lion was an improper refusal,[3] this is insufficient to confer

23  _____

24       [2]  According to the letter of Mr. Martinez dated June 21, 2005
    (Leighton Decl. Ex. I), Lion's request was dated June 15, 2005.
25  Neither Lion nor USDA submitted a copy of this request.
         [3]  To the extent Lion asserts that Mr. Martinez's letter
26  claimed inspections are not available to Lion under 7 C.F.R. § 52,
    the assertion is unsupported.  At no point does the letter imply

11

1  subject matter jurisdiction that was lacking when the Complaint

2  was filed.  See Moore's, supra.

3      **ACCORDINGLY, IT IS ORDERED** that the USDA's motion is hereby

4  GRANTED.

5      **FURTHER ORDERED** that the Complaint is DISMISSED for lack of

6  subject matter jurisdiction.  The clerk shall close the case.

7

8  IT IS SO ORDERED.

9  **Dated:  August 29, 2005**                    **/s/ Robert E. Coyle**

10 ia40ij                              UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23 ─────────────────────

24 that Lion cannot receive inspections under part 52.  To the contrary, the letter informs Lion that if it "would like to request an inspection of natural condition raisins, please submit an

25 application for inspection services pursuant to section 52.6 of the regulations governing inspection and certification.  7 C.F.R. §

26 52.6."  Leighton Decl. Ex. I.

                                    12